# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 221

Steven Nelson, individually, and in the
right of and for the benefit of J & S
Nelson Farms, LLP,                                   Plaintiff and Appellant

v.

James Nelson, Brian Nelson,
David Nelson, and J & S Nelson Farms, LLP,           Defendants and Appellees

No. 20180421

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable John A. Thelen, Judge.

AFFIRMED IN PART, AND REVERSED IN PART.

Opinion of the Court by VandeWalle, Chief Justice.

DeWayne A. Johnston (argued) and David C. Thompson (appeared), Grand Forks, ND, for plaintiff and appellant.

Patrick J. Sinner (argued) and Kip M. Kaler (appeared), Fargo, ND, for defendants and appellees.

**VandeWalle, Chief Justice.**

[¶1]     Steven Nelson, individually and for the benefit of J&S Nelson Farms, LLP, appealed from a judgment determining the value of his interest in the Nelson Farms partnership and an order denying his post-judgment motions.  Steven Nelson argues the district court erred by ordering various sanctions and determining the value of the partnership.  We conclude the district court did not err by striking some of Steven Nelson's claims as a discovery sanction, awarding the defendants a portion of the attorney's fees they incurred in this action, or determining the value of Steven Nelson's interest in the partnership. However, we also conclude the district court abused its discretion by ordering Steven Nelson reimburse the partnership for the attorney's fees and costs it incurred as a result of a separate action in federal court. We affirm as well as we reverse.

I

[¶2]     In 2015 in United States District Court for the district of Minnesota, Steven Nelson sued James Nelson; AgCountry Farm Credit Services, ACA; and two of AgCountry's employees for claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  Steven Nelson alleged James Nelson and the AgCountry defendants conspired and engaged in racketeering activities through a pattern of false financial reporting, fictitious financial transactions, tax evasion, and theft.  The complaint was dismissed for failing to state a claim upon which relief can be granted. *Nelson v. Nelson*, Civ. No. 14-4854, 2015 WL 4136339 (D. Minn. July 8, 2015).  The dismissal was affirmed on appeal. *See Nelson v. Nelson*, 833 F.3d 965 (8th Cir. 2016).

[¶3]     In September 2015 in Grand Forks County District Court, Steven Nelson sued James Nelson, Brian Nelson, David Nelson, and J&S Nelson Farms, LLP, seeking a

declaratory judgment and damages for numerous claims related to operation of the Nelson Farms partnership. Steven Nelson alleged he was a partner of Nelson Farms, the defendants were also partners, he was wrongfully dissociated from the partnership through the defendants' wrongful actions, and the defendants were responsible for the improper diversion of approximately $2,000,000 in partnership funds for their personal use.

[¶4]    The defendants answered and counterclaimed requesting the district court determine Steven Nelson had been dissociated from the partnership and determine the extent to which he was entitled to a buy-out and all offsets the partnership or individual partners were entitled to as a result of any damages caused to the partnership. The defendants also requested the court dismiss Steven Nelson's complaint.

[¶5]    In November 2015, the defendants moved to dissociate Steven Nelson from the partnership under N.D.C.C. § 45-18-01, alleging he engaged in conduct relating to the partnership which made it not reasonably practicable to carry on the business in partnership with him. In December 2015, the district court granted the motion, found reconciliation of the partners was not a realistic possibility and Steven Nelson indicated he wanted a buy-out, and ordered Steven Nelson shall no longer be a partner of Nelson Farms as of January 1, 2016.

[¶6]    On October 13, 2016, the defendants moved to compel discovery under N.D.R.Civ.P. 37. The defendants alleged they served interrogatories and a request for production of documents on Steven Nelson on May 3, 2016, responses were due on June 16, 2016, Steven Nelson responded on June 21, 2016, and the responses were significantly deficient. The defendants claimed they had several discussions and meetings with Steven Nelson and he continued to fail to provide appropriate discovery responses. The defendants requested the court issue an order compelling Steven Nelson to answer interrogatory #7, requesting Steven Nelson identify and provide certain information about every transaction for which he was seeking recovery, and provide documentation in response to request for production of

2

documents #4, requiring Steven Nelson to produce all documents identified relating to each transaction in interrogatory #7. The defendants claimed Steven Nelson's response was in the form of three documents, which at best was "a conclusory list of transactions that have some issue." The defendants asserted Steven Nelson simply identified an entire series of transactions he apparently disputed but did not identify what was wrong with the transactions, indicate whether he disputed the entire transaction, explain how he calculated his damages as a result, or produce the supporting documents. The defendants also requested the court award them attorney's fees and reasonable expenses for the motion. Steven Nelson opposed the motion to compel and moved for a protective order.

[¶7] After a hearing, the district court ordered Steven Nelson to submit full and complete responses to interrogatory #7 and produce all documents responsive to request for production of documents #4 by December 8, 2016. The court also denied Steven Nelson's motion for a protective order and ordered Steven Nelson pay the defendants $1,755 for their costs and attorney's fees.

[¶8] In January 2017, the defendants moved to compel discovery and to hold Steven Nelson in contempt. The defendants alleged Steven Nelson continued to fail to produce any response to interrogatory #7 and did not produce any documents responsive to request for production of documents #4. The defendants also alleged Steven Nelson failed to pay the ordered costs and attorney's fees. The defendants requested the court sanction Steven Nelson for failing to comply with discovery by striking all claims in his pleadings requesting damages.

[¶9] After a hearing, the district court granted the defendants' motion. The court found Steven Nelson failed to comply with the prior order compelling discovery, the defendants made numerous informal requests for Steven Nelson to provide the discovery and payment of the ordered costs and attorney's fees, Steven Nelson never fulfilled his promises to comply with discovery, and he disputed the need to comply with the order. The court stated Steven Nelson continued to dispute during the hearing that he needed to comply with the order to pay $1,755 in costs and attorney's

3

fees, but it had been informed the fees had been paid. The court ordered that Steven Nelson's damage claims related to interrogatory #7 and request for production of documents #4 were stricken from the complaint as a sanction for his failure to comply with discovery and that he pay the defendants $1,320 as reimbursement for their legal costs and attorney's fees in bringing the second motion to compel.

[¶10] After a bench trial, the district court decided the remaining issues, including the valuation of the partnership, sanctions, and attorney's fees. The court found Steven Nelson was dissociated from the partnership on December 31, 2015, the gross value of his interest in the partnership was $544,397, the partnership previously paid Steven Nelson $371,000, and the remaining balance of $173,397 would be paid in accordance with the buyout provisions of the partnership agreement. The court ordered Steven Nelson's distribution from the partnership be reduced by $33,666.04 for the litigation costs the partnership paid as a result of the federal RICO action. The court awarded the defendants 25 percent of their actual costs and attorney's fees in this case as a sanction for vexatious litigation. The court later calculated the actual amount of the attorney's fees and costs for the action based on the defendants' affidavit and ordered $29,447.37 be deducted from the remaining amount owed to Steven Nelson for his share of the partnership. Judgment was entered in favor of Steven Nelson for $128,919.49 for the remaining value of his share of the partnership.

[¶11] Steven Nelson moved for a new trial or, alternatively, for relief from the judgment. The district court denied his motions.

II

[¶12] Steven Nelson argues the district court erred by striking all claims related to more than 2,000 improper transactions as a discovery sanction. He contends he identified more than 2,000 transactions in which James Nelson improperly took money from the partnership for personal use, James Nelson's actions were intrinsically improper, the defendants never described how additional explanation

4

about each transaction was necessary or possible, and the sanction for the alleged discovery violation was too harsh.

[¶13] The district court has broad discretion to impose appropriate sanctions for discovery abuses, and its decision will not be reversed on appeal unless the court abused its discretion. *Bertsch v. Bertsch*, 2007 ND 168, ¶ 13, 740 N.W.2d 388. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Perius v. Nodak Mut. Ins. Co.*, 2012 ND 54, ¶ 8, 813 N.W.2d 580. "The appellant who is contesting the district court's choice of a sanction has the burden of showing the abuse of discretion, and that burden is met only when it is clear that no reasonable person would agree with the trial court's assessment of what sanctions are appropriate." *Ihli v. Lazzaretto*, 2015 ND 151, ¶ 8, 864 N.W.2d 483 (quoting *Fines v. Ressler Enters., Inc.*, 2012 ND 175, ¶ 15, 820 N.W.2d 688). This Court has said even when a party believes the district court's discovery order is erroneous, the party must comply as long as it remains in force. *Bertsch*, at ¶ 15.

[¶14] The district court has a wide spectrum of sanctions for discovery violations, including striking pleadings and entry of default judgment against the disobedient party. *Vorachek v. Citizens State Bank of Lankin*, 421 N.W.2d 45, 50 (N.D. 1988). Rule 37(b), N.D.R.Civ.P., allows a court to impose sanctions on a party for failing to comply with a discovery order, stating:

> For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent–or a witness designated under Rule 30(b)(6) or 31(a)(4)–fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

N.D.R.Civ.P. 37(b)(2)(A). This Court has explained that dismissal of a claim or striking of pleadings is an available sanction:

> Dismissal of an action or entry of a default judgment as a sanction for discovery abuse should be imposed only if there is a deliberate or bad faith non-compliance which constitutes a flagrant abuse of or disregard for the discovery rules. . . . Although the law favors resolution of disputes on the merits, that consideration must be balanced against the need to deter discovery abuses, promote efficient litigation, and protect the interests of all litigants. Therefore, the most severe sanctions must be available, not only to penalize those whose conduct is deemed to warrant those sanctions, but also to deter those who might be tempted to abuse the discovery process.

*Vorachek*, at 50-51.

[¶15] The defendants claimed they initially requested discovery in May 2016, Steven Nelson responded late and his responses were deficient, and he continued to fail to provided appropriate responses after several meetings with the defendants. The defendants moved to compel discovery in October 2016. In December 2016, the district court granted the defendants' motion and ordered Steven Nelson to submit full and complete responses.

[¶16] In January 2017, the defendants moved to compel discovery again and requested the court hold Steven Nelson in contempt. The defendants argued Steven Nelson continued to fail to produce adequate response to interrogatory #7 and did not produce any documents responsive to request for production of documents #4.

[¶17] The district court granted the defendants' motion. The court found, "At this point in time it's clear to the court that plaintiff does not intend to comply with defendants' original discovery request or the court's prior discovery directive . . . ." The court found Steven Nelson was provided with a computer disk containing all individual invoices/receipts of the partnership for 2009 through 2015; he had access

6

to all accounting documentation since mid-July 2016 and he identified hundreds of transactions he claimed were improper; the discovery he provided in three documents at best provided a conclusory list of some questionable transactions; but he failed to identify what was wrong with each particular transaction, whether he disputed the entire transaction, and how he equated the improper transaction to a damage amount. The court noted Steven Nelson had put a lot of time into attempting to provide the requested discovery and he acknowledged that he does not have the knowledge or accounting background to follow transactions through various accounts and that he is learning accounting practices as he goes, but the court found that was not a justifiable excuse for noncompliance with discovery. The court said, "Six months after being provided with all partnership records including accounting records, tax returns, and business receipts, [Steven Nelson] is unable to provide details as to the impropriety of certain transactions and his claim for damages connected to those transactions." The court concluded Steven Nelson's failure or refusal to comply with the discovery request was significant misconduct and disregard of the court's prior order, and striking all claims for damages connected to interrogatory #7 and production of documents #4 was an appropriate sanction.

[¶18] Steven Nelson was given multiple opportunities to comply with the discovery request. The defendants attempted to resolve the issue informally and eventually filed two motions to compel. The district court ordered Steven Nelson to comply with the discovery request. The court found Steven Nelson had all of the information requested in his possession and he refused to comply with the court's order. The court found Steven Nelson's failure to comply was significant misconduct and significant disregard for the applicable Rules of Civil Procedure.

[¶19] Although striking all claims for damages related to the requested discovery is a severe sanction, the district court gave Steven Nelson multiple opportunities to comply and he refused. This Court has said, "[D]ismissal should be used sparingly and only if 'there is a deliberate or bad faith non-compliance which constitutes a flagrant abuse of or disregard for the discovery rules.'" *Richard B. Baer, P.C. v.*

7

*Bauch*, 1999 ND 177, ¶ 11, 599 N.W.2d 306 (quoting *Vorachek*, 421 N.W.2d at 51). The court did not act in an arbitrary, unreasonable, or unconscionable manner. We conclude the court did not abuse it discretion by striking the claims related to interrogatory #7 and production of documents #4.

III

[¶20]   Steven Nelson argues the district court erred by offsetting the amount he was awarded for his share of the partnership with $63,113.37 in sanctions and attorney's fees because there was no legal or factual basis for the court to impose the sanctions. He contends the $33,666.04 sanction for the litigation costs the defendants incurred as a result of the federal RICO litigation was improper because the defendants never requested attorney's fees and costs in the federal action, the federal courts never found the RICO case was frivolous, and no evidence was presented in this case that the RICO action was frivolous. Steven Nelson also claims the sanction of $29,447 for a portion of the defendants' costs and attorney's fees in this action was also improper.

[¶21]   The district court has broad discretion to award attorney's fees. *Lizakowski v. Lizakowski*, 2019 ND 177, ¶ 18, 930 N.W.2d 609. The court has inherent authority to award attorney's fees as a sanction for a litigant's misconduct, and sanctions based on this power will only be reversed on appeal if the court abused its discretion. *Heinle v. Heinle*, 2010 ND 5, ¶ 30, 777 N.W.2d 590.

A

[¶22]   The district court ordered the amount Steven Nelson was due for his interest in the partnership be reduced by the amount of the defendants' costs and attorney's fees from the federal RICO case. The court found:

> The Complaint in that RICO action is virtually identical to the complaint contained in this action, without the allegation of the federal RICO violation claim. All of the fact scenarios described in that federal litigation are repeated in this state court action.
>
> The federal RICO action was dismissed on the pleadings without the need of the defendants submitting an answer. In fact, the complaint

8

was amended and Defendants twice made motions to dismiss. Ultimately, the federal district court dismissed the federal RICO action. Thereafter, the plaintiff appealed that decision to the 8th Circuit Court of Appeals, which affirmed the decision on a slightly different basis, but ultimately, the same conclusion – the plaintiff has failed to state a cause of action.

While the plaintiff himself may be unaware of the following facts, they are material in the nature of the use of the federal RICO action against James. DeWayne Johnston, the attorney for Steven, had (in two prior cases) similarly commenced a federal RICO action against other partners or other joint ventures in virtually identical litigation in North Dakota federal district court. Both were dismissed by the North Dakota federal court. There is an implication, if it did not actually occur, that the plaintiff chose not to institute the federal RICO action against James in North Dakota for the simple reason that the North Dakota federal court was not going to countenance that type of action in a partnership setting. It becomes all the more apparent that plaintiff was forum shopping when he came before this Court alleging the application of Minnesota law to a Minnesota partnership which happens to operate in Minnesota and North Dakota, but initiates the action in North Dakota. Plaintiff provides no further explanation as to why this litigation was commenced in North Dakota, particularly given the fact that he had previously chosen to bring the federal RICO action in Minnesota, the fact that the Partnership is located in Minnesota along with most of its assets, and then argues for the application of Minnesota law to the case.

There is no doubt that the plaintiff has plotted a course of action that has unnecessarily multiplied the cost of this litigation and, ultimately, for no benefit substantially greater than was offered him or what he could have obtained through fair and reasonable analysis of the Partnership value and his entitlement to his share of that value.

. . . The court finds that the RICO action was an ill-advised effort in lieu of an attempt at obtaining fair compensation for Steven's interest in the Partnership which is all his case really is about.

Had James not been a partner he would not have been a party to the federal RICO action. . . . It is more than likely that the federal RICO action was in fact an attempt to coerce from James a settlement of Steven's dissociation for an amount in excess of its fair value. The court can see no other reasonable explanation for bringing such a misguided action in federal court. James should not have to be personally responsible for the defense of his actions as a partner in the Partnership.

. . . .

9

Given the baseless nature of the federal RICO action, to the extent the law will allow it, James should be indemnified by the Partnership for the costs and fees of defending himself. Further, the Partnership agreement in paragraph 7 provides:

"Should any losses suffered by the Partnership be occasioned by the willful neglect or default of a partner, and not mere mistake or error of judgment of said partner, losses so incurred shall be made good by the partner committing the willful neglect or default."

The Partnership's contemplated losses occasioned by willful acts of a partner should be the obligation of that partner. Steven hired Mr. Johnston to represent him and as the client, Steven is financially responsible for misdeeds of his legal counsel.

The court finds that Steven should reimburse the Partnership for the fees and costs expended in defending James in the Minnesota RICO action. Further, Steven should reimburse the Partnership the fees and costs it incurred, post-dissociation, defending James in the Minnesota federal court action. These expenses should be deducted from the sum ultimately due Steven in this action.

The court concluded, "Steven has the obligation, pursuant to the [partnership agreement] and the law, to 'make good' the losses incurred as a result of his actions. Steven's distribution from the Partnership shall be reduced by the litigation costs of the Partnership in the amount of $33,666.04."

[¶23] The defendants contend the district court did not err in ordering payment of the attorney's fees because Steven Nelson was required to reimburse the partnership under paragraph 7 of the partnership agreement, which states, "Should any losses suffered by the partnership be occasioned by the willful neglect or default of a partner, and not mere mistake or error of judgment of said partner, losses so incurred shall be made good by the partner committing the willful neglect or default." The plain language of the partnership agreement requires a partner to reimburse the partnership for any loss it suffered as a result of a partner's willful neglect or default. The defendants do not explain why reimbursement was required under the terms of this provision and how bringing the RICO suit constituted willful neglect or default. The district court concluded Steven Nelson had an obligation to reimburse the partnership for his willful acts that caused the partnership losses. The agreement

requires "willful neglect," and willful acts alone are not sufficient. Steven Nelson is not required to reimburse the partnership for the costs it incurred under this provision of the partnership agreement.

[¶24] The defendants also cite Minn. Stat. § 323A.0401(c) in support of their argument the attorney's fees were appropriate. However, the cited statutory law does not require Steven Nelson to reimburse the partnership for costs it incurred in the federal RICO action. Section 323A.0401(c), Minn. Stat., states, "A partnership shall reimburse a partner for payments made and indemnify a partner for liabilities incurred by the partner in the ordinary course of the business of the partnership or for the preservation of its business or property." The partnership may be required to reimburse James Nelson under that provision, but it does not require Steven Nelson to reimburse the partnership for expenses it incurred as a result of the federal RICO action. *See also Moren ex rel. Moren v. JAX Restaurant*, 679 N.W.2d 165, 167 (Minn. Ct. App. 2004) (holding a partner has a right to indemnity from the partnership under Minnesota's Uniform Partnership Act, but a partnership's claim of indemnity from a partner is not authorized or required).

[¶25] The district court did not cite any other authority that allows it to award attorney's fees incurred in a federal action as a sanction in a state action. The defendants do not argue there is any other statute or rule that authorizes the district court to award these attorney's fees in this case. It is clear the court believes the federal action was frivolous, but whether the federal RICO action was frivolous and attorney's fees should be awarded was an issue to be decided in the federal action. We conclude the district court abused its discretion by ordering Steven Nelson reimburse the partnership for the attorney's fees and expenses it incurred as a result of the federal RICO action.

B

[¶26] Steven Nelson argues the district court erred by reducing the amount of his partnership distribution by $29,447 for the defendants' attorney's fees in this case.

11

[¶27]   "The district court has authority to stem abuses of the judicial process, which comes not only from applicable rules and statutes, such as N.D.R.Civ.P. 11, but 'from the court's inherent power to control its docket and to protect its jurisdiction and judgments, the integrity of the court, and the orderly and expeditious administration of justice.'" *Estate of Pedro v. Scheeler*, 2014 ND 237, ¶ 14, 856 N.W.2d 775 (quoting *Federal Land Bank v. Ziebarth*, 520 N.W.2d 51, 58 (N.D. 1994)).   The district court has inherent authority to award attorney's fees for a litigant's misconduct.  *Lizakowski*, 2019 ND 177, ¶ 18, 930 N.W.2d 609.  A district court has discretion under N.D.C.C. § 28-26-01 to determine whether a claim is frivolous and the amount and reasonableness of an award of attorney's fees.  *See Estate of Pedro*, at ¶ 14.  A claim is frivolous if there is "such a complete absence of actual facts or law a reasonable person could not have expected a court would render a judgment in that person's favor."  *Id.*

[¶28]   The district court ordered Steven Nelson to pay 25 percent of the defendants' costs and attorney's fees in this case as a sanction for vexatious litigation.  The court found, "[Steven Nelson's] behavior in the conduct of this litigation was unnecessarily expensive and detrimental to the defendants in its presentation and adversely and significantly impacted defendants by having to repeatedly defend baseless arguments."  The court gave several examples, including that Steven Nelson moved to compel the partnership to pay the full amount of the value of his interest on April 1, 2016; the court denied the request; and Steven Nelson reasserted the demand in subsequent pleadings and at trial, which were denied.  The court also noted Steven Nelson's lack of discovery and preparation for trial increased the defendants' expenses, explaining:

> At one of the discovery enforcement hearings plaintiff/Johnston warranted to the court that he had retained an expert to assist in the accounting of partnership records.  However, plaintiff had not hired such an expert. . . .  Plaintiff did no discovery, sent out no interrogatories or request for production of documents and did no depositions; highly unusual, considering plaintiff's belief that his action was a million/multimillion dollar lawsuit.  The first three days of trial showed the effects of plaintiff's lack of discovery as the first three days

12

of trial appeared to be more like a discovery deposition than the presentation of evidence. In fact, the first three days of trial produced what amounted to about $1200-$1300 in damages, amounts defendants were willing to stipulate to for the sake of conserving financial resources. It was not until the last day of trial, and if the court recalls correctly, the afternoon of the last day of trial, that plaintiff finally covered the fact that defendant's prior proposals for settlement did not include a capital account entry accounting for Steven and James 79/80 shares of beet stock contribution. . . . Defendants immediately acknowledged the error and agreed that Steven's capital account should be increased accordingly. Could such not have been addressed by discovery? The lack of trial preparation by the plaintiff clearly increased the expense for the defendants in defending the cause of action and prevented the parties from engaging in any meaningful settlement negotiations.

The court found Steven Nelson compounded the defendants' costs of the litigation by at least 25 percent. The court explained it has the inherent power to control its docket and protect the integrity of the court and the orderly and expeditious administration of judgment, and concluded:

> The docket in this case is replete with numerous instances where Steven made frivolous claims and motions, requested relief already ruled on by the Court, failed to act in accordance with previous court rulings, failed to abide by the court's order for sanctions, and failed to make a good faith effort to work with opposing parties or this court in narrowing the real issues needed to be tried. The behavior exhibited by the plaintiff ranged from simple unpreparedness to an abuse of the court system (e.g. repeated challenges to orders previously issued, failed to clarify the plaintiff's claims (forcing the Court to define plaintiff's "factual scenarios" for trial and then professing a lack of understanding of what was to be tried, but not offering an analysis of the issues for trial), and employing tactics that could not be successful while multiplying the proceedings (offering witnesses that produced no useful testimony for plaintiff, and objections to evidence that had no basis, etc.).
>
> Therefore, the Court orders that the defendants be awarded 25% of their actual costs and fees, as compensation for defending this action in response to unnecessary and duplicitous proceedings in this matter. Defendants shall submit to the Court their actual costs and fees of this litigation via affidavit, within 10 days of issuance of this order.

[¶29]  The district court did not act in an arbitrary, unreasonable, or unconscionable manner by awarding the defendants attorney's fees in this action as a sanction against Steven Nelson for vexatious litigation.  We conclude the court did not abuse its discretion.

IV

[¶30]  Steven Nelson argues the district court erred in finding the valuation of the partnership.  He claims the court was required to determine the value of the partnership based upon a sale of the entire business as a going concern under Minn. Stat. § 323A.0701 and should have determined the value based on evidence from a gift tax return.

[¶31]  Finding the value of a partnership is a finding of fact, which is reviewed under the clearly erroneous standard on appeal.  *See Puklich v. Puklich*, 2019 ND 154, ¶ 8, 930 N.W.2d 593.  A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if this Court is convinced, based on the entire record, that a mistake has been made.  *Id.* "A district court's finding is not clearly erroneous if it represents a choice between two permissible views of the evidence and the finding is based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations."  *Id.* "A district court's valuations are presumed by this Court to be correct, and a valuation within the range of evidence presented to the court is not clearly erroneous." *Id.*

[¶32]  Section 323A.0701(b), Minn. Stat., states, "The buyout price of a dissociated partner's interest is the amount that would have been distributable to the dissociating partner under section 323A.0807(b), if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership were wound up as of that date."  Assuming the Minnesota statutory law applies, Steven Nelson did not present any evidence of the value of the partnership on the date of dissociation.  Steven Nelson argues the court should have

14

considered a gift tax return dated May 2014. Steven Nelson offered the gift tax return as evidence of the valuation of the partnership, and the defendants objected, arguing the gift tax return was irrelevant. The court sustained the objection and ruled the tax return evidence was not relevant as to the value of the partnership at the time of dissociation. The evidence the defendants produced was the only documentary evidence about the valuation as of December 31, 2015, the date of Steven Nelson's dissociation.

[¶33] The district court found Steven Nelson failed to produce an alternative accounting for the partnership or show what adjustments should be made to the partnership's accounting, and found the value should be determined based on the defendants' partnership accounting submitted in an April 4, 2016 letter to Johnston. Steven Nelson failed to present evidence of the value of the partnership on the date of dissociation based on a sale of the entire business as a going concern without the dissociated partner. A district court's choice between two permissible views of the evidence is not clearly erroneous. *Puklich*, 2019 ND 154, ¶ 8, 930 N.W.2d 593. The court's valuation was within the range of the only evidence presented. The court's findings about the partnership valuation are not clearly erroneous.

V

[¶34] Steven Nelson argues the district court committed error by denying his post-judgment motions under N.D.R.Civ.P. 52, 59, and 60. Other than stating he filed post-judgment motions and asserting the district court committed error by denying these motions, Steven Nelson failed to present any other argument identifying or explaining the alleged error. Because he failed to adequately brief and provide supporting argument on the issue, Steven Nelson waived any arguments on appeal about the post-judgment motions. *See Bearce v. Yellowstone Energy Dev., LLC*, 2019 ND 89, ¶ 29, 924 N.W.2d 791.

VI

15

[¶35] We conclude the district court did not err by striking some of Steven Nelson's claims as a discovery sanction, awarding the defendants a portion of the attorney's fees they incurred in this action, or determining the value of Steven Nelson's interest in the partnership. But we also conclude the court erred by ordering the amount Steven Nelson was due for his interest in the partnership be reduced by $33,666.04 for the partnership's costs and attorney's fees incurred as a result of the federal RICO litigation. We affirm the judgment and order in part and reverse in part.

[¶36] Gerald W. VandeWalle, C.J.
Jon J. Jensen
Jerod E. Tufte
Daniel J. Crothers
Lisa Fair McEvers

16